## DE BLANC *v.* DUMARTRAIT.

The owner of an undivided third interest in certain real estate, having mortgaged it to plaintiff, by an act duly recorded, subsequently sold his third to the owner of the other two thirds. A creditor of the latter, who subsequently obtained a judgment against him, seized the whole property under execution, and sold it for a price less than the mortgage upon the one-third, and the whole price was paid to the judgment creditor. The first mortgagee was not a party to these proceedings. In an action by him against the purchaser as third possessor: *Held*, that plaintiff's mortgage-rights are protected by arts. 683, 684 of the Code; and that, under art. 709, he is entitled to an hypothecary action against the purchaser at the judicial sale, as a third possessor who has taken subject to the mortgage.

APPEAL from the District Court of St. Martin, *Overton, J. Magill* and *Olivier*, for the plaintiff, cited C. P. 709, 684. 1 An. 32. 2 An. 119.

*E. Simon*, for the appellant. This is an action of mortgage, in which the plaintiff prays that the defendant, who is the owner and in possession of a certain town lot and brick building erected thereon, alleged to be mortgaged for one-third thereof, as security for the payment of a sum due him by two individuals, be condemned to pay him said sum, and that the property be seized and sold to satisfy his demand. The mortgage on which this suit was brought, was executed on the 17th March, 1840, by two partners of two distinct commercial firms, each upon his undivided and indivisible portion, to wit: *Pierre Gary*, of the firm of *Gary & Fournet*, upon his two-ninths, and *J. B. Derbés*, of the house of *Derbés, Delahoussaye & Co.*, upon one-ninth. A short time afterwards the property was acquired, *in toto*, by *Derbés, Delahoussaye & Co.*, who continued to own it, until it was sold by the sheriff at the suit of one of the creditors of the firm. On the 6th of November, 1840, *Waterston, Pray & Co.*, creditors of *Derbés, Delahoussaye & Co.*, obtained a judgment against said firm, which was duly recorded on the 11th of the same month. The debt was contracted by the firm, in August, 1839; the judicial mortgage of *Waterston & Co.*, extended over the whole and entire property, and, though indivisible by law, was the first in rank for two-thirds of the property, also indivisible by its nature. The property thus mortgaged could never, owing to the state of indivisibility, be divided but by a sale thereof; and accordingly, as there was no occasion to cause it to be sold in order to divide its proceeds between the co-proprietors, it was at once seized by the sheriff on the execution that issued on their twelve months' bond, and sold integrally to the defendants, who, not aware of the existence of the plaintiff's mortgage, paid the whole price to the sheriff, who paid it over to the seizing creditors, as no opposition was made to his disposing of it according to the writ, which he was bound to return. The mortgage-right of the plaintiff was, by the effect of the sale, transferred from the property to its proceeds, which became subject to be divided between the creditors entitled thereto; and that, therefore, said property could not be sold, and was not sold subject to any mortgage; otherwise it could never have been sold. Under its peculiar circumstances, this case presents a question which is not without importance: Can a mortgage creditor of any one of the partners of a firm, or of any one of several co-partners, prevent the sale of the whole undivided and indivisible property owned in common by his debtor or by others, when his right extends only over the mortgagor's undivided and indivisible portion, and when such sale is to be made either at the suit of a mortgage creditor of the firm whose right

extends over the whole, though inferior in rank as to a certain portion thereof, or for the purpose of making a division thereof between the co-proprietors? Is not such private creditor's mortgage, by the effect of the forced sale of the property, transferred from the thing to its proceeds in the hands of the sheriff? And, if he fails to enforce his rights by means of a third opposition, can he be allowed to proceed subsequently against the property, in the hands of the purchaser and third possessor thereof?

I admit that, in ordinary cases of the seizure and sale of property subject to any mortgage or privilege higher in rank on the whole than that of the seizing creditor, such property must be sold subject to such mortgage or privilege (C. C. arts. 679, 683, 706) ; that, therefore, the previous mortgagee's right upon the property continues to exist; and that, if the price offered for it is not sufficient to discharge the anterior mortgages, there cannot be any sale. C. C. art. 684. I admit also that the purchaser of such property at sheriff's sale, becomes, in case of his not discharging the previous mortgages, subject to be acted against as a third possessor. C. C. art. 709. But I contend that those rules do not, and cannot, apply to the rights of the parties to this controversy ; that, under its peculiar circumstances of indivision and indivisibility, the plaintiff's remedy was by third opposition on the proceeds whilst in the hands of the sheriff, and that, he cannot exercise any recourse against the property in the hands of the defendant.

It is a well known principle that, a mortgage is in its nature indivisible, and prevails over all the immovables subjected to it, and over each and every portion. C. C. art. 3249. So here, the mortgage of the seizing creditors could not be divided ; they had the right, and were even bound, to enforce it over the whole property, as they clearly could not seize and sell any undivided or indivisible portion thereof. Still, however, their judicial mortgage was indisputable, and first in rank on two-thirds of the property seized ; and it is obvious that, as they could not legally and properly limit their seizure to that proportion, as they could not divide their mortgage, it was impossible to proceed in any other manner but by selling the whole, though their right may have been, as to one-third of the property, inferior to that of the plaintiff. The mortgagees were in a state of indivision ; neither could act separately without putting the property integrally under the hammer of the sheriff; the thing mortgaged was also indivisible—a house and lot (C. C. art. 2104), and was, in its state of indivisibility, subject to the exercise of the mortgage-right of the seizing creditors.

How then could the rule pointed out by art. 684 of the Code of Practice, be applicable ? Or, how can it be pretended that the property is yet, in the hands of the defendant, subject to the plaintiff's mortgage ? The amount due to the plaintiff could form no part of the price, beyond, perhaps, the one-third thereof, and the defendant purchased the entire property. The debt secured by plaintiff's mortgage was too large in proportion to the real value of the entire property, to expect that one-third of the price given for the whole would be sufficient to satisfy said plaintiff's claim, and yet it is insisted that, according to art. 684, there was no sale. No sale of what ? Was it of the entire property or of one-third thereof? This cannot be pretended with respect to the whole, for it is clear the plaintiff's right does not extend beyond one-third of the property, and the seizing creditors were the first in rank for the other two-thirds ; nor can it be so with regard to the undivided portion subject to the plaintiff's mortgage, as that would be in direct violation of the rules of law relaitve to the indivisibility of the mortgage and of the thing subject thereto, and the seizing creditors would then virtually be compelled to divide their rights, and to enforce it only on a portion of a thing in its nature indivisible. Under such circumstances, what could the sheriff or the seizing creditors do ? Could they divide the property, and sell it by portions ? No ; for the mortgage could not be divided, nor could any distinction be made between any parts of the thing subject to two different mortgages of equal dignity on different portions, and the whole was subject to the creditors' judicial mortgage. Were they bound to make the amount due to the plaintiff out of one-third of the price ? Surely not, for that would have prevented the sale of the whole: and the mortgage-right of the seizing creditors on the other two-thirds would thus have become illusive and nugatory. This would be a kind of indivision of rights, in which a dormant mortgage creditor could compel the other to remain ; as whenever the latter would attempt to enforce his mortgage by the sale of the property, the inaction of the other would always prevent the sale, if such property was so situated as

De Blanc
v.
Dumartrait.

not to bring enough to satisfy the debt due to the inactive creditor. This our laws can never have contemplated, and I contend that the plaintiff's remedy— his only remedy—if he fail to proceed to the foreclosure of his mortgage by proceedings had at his own suit, was by third opposition, duly exercised on the proceeds of the sale, under arts. 396, 401, and 402 of the Code of Practice. If there ever was a case in which the third opposition was to be properly resorted to, it is this; it would have afforded the plaintiff the means to get his portion of the price under the right of preference for one-third, and the seizing creditors would only have received the amount to which they were really entitled.

Reasoning by analogy, (indeed, there is great similarity in the two cases, and they should be governed by the same rules. C. C. art. 1304), how would it be if the property, instead of being owned jointly by the members of a partnership or by ordinary co-proprietors, belonged jointly to co-heirs, one of whom had given a mortgage on his share to secure his private debt? Could it be seriously pretended that the private creditor would have the right of preventing the sale of the property, to make a partition thereof or to pay a debt of the estate; or that such property should be sold subject to his mortgage to the extent of his debtor's portion? Surely not. In such a case, the proceeds of the share so mortgaged would stand in lieu of the property, and be subject to the claims of the mortgage creditor. *Succession of Pigneguy*, 12 Rob. 450, and the authorities there cited. So should it be in this case, and in all other cases, where, from the circumstances of the indivision and indivisibility of the mortgage and of the property subject thereto, the thing owned in common, (a slave for instance,) could not be sold by separate portions, or to an amount sufficient to satisfy the private debtor's claim, under his partial mortgage.

Whenever property owned in common by co-heirs or other co-proprietors is indivisible by its nature, it must be sold. C. C. art. 126. No one can be compelled to hold property with another. C. C. 1215. And it does really strike me that, if this honorable court were to say that there was no sale of the portion subject to the plaintiff's mortgage, unless it brought an amount sufficient, in proportion to the price of the whole to satisfy his claim, or that the property having been sold integrally, remained subject to his said partial mortgage, such a decision, unjust in its consequences, so far as this case is concerned, and greatly injurious to the defendant, would henceforth have the effect of preventing the sale of property similarly situated, and of compelling joint-owners of such property and mortgage creditors of equal dignity on different portions thereof, to remain in a state of indivision, at least until it might please the private creditor to enforce his right. Again, could *Waterston, Pray & Co.* seize only two-thirds of the property under a judicial mortgage extending over the whole? Could they have it sold by portions, so as to make a distinction between the different portions of the price coming to different creditors of equal dignity? Could they divide their mortgage, and the thing subject thereto? If they could not, the sale was legal and valid far the whole, and the plaintiff must be left to his remedy on the portion of the price corresponding with his right.

I do not deny that a co-heir, or a co-proprietor, may mortgage his undivided portion of the property held in common. He may mortgage it, and his creditors will have the full benefit of it. Troplong, Hypothèques, v. 2, no. 469. But I contend that the enforcement of such a mortgage must be according to the situation of the thing subject thereto; that it cannot be in the way of the partition of the property, if it be made by a sale thereof; that it cannot prevent such sale when to be made to pay debts secured by a general mortgage on the whole, and partly of the same dignity; and that, when such sale has been effected, the partial mortgage must necessarily be transferred from the property to its proceeds. Under a similar system, it has been decided in France that, "the personal creditors of one of several co-heirs, who, before the partition, had taken a mortgage on the undivided property of the succession, ought, in case of judicial sale of such property, to be paid on the portion of the price coming to their debtor, according to the rank of their mortgages." Dalloz, v. 35, part 2, p. 202. Ibid. vol. 27, part 1, p. 83. This doctrine is law under our Code. See 12 Rob. 450.

The plaintiff has mistaken his remedy; he ought to have resorted to a third opposition, when the money was in the hands of the sheriff; not having availed himself of the proper remedy, the defendant cannot be made to suffer; and the plaintiff's mortgage, being discharged by the effect of the sale, so far as the

property sold was concerned, it has ceased to bear upon it in the hands of the defendant.

The judgment of the court was pronounced by

Slidell, J. This is an action of mortgage, against a third possessor of a town lot and a house erected upon it. The mortgage held by the plaintiff was executed in 1840, by two persons, then the lawful owners of interests, amounting collectively, to one undivided third of the property; and was duly recorded. Subsequently they sold their interests, and *Derbés, Delahoussaye & Co.* became the owners of the entire estate. A creditor obtained a judgment against *Derbés, Delahoussaye & Co.*, in 1841; and, upon execution, seized and sold the entire property for a price less than the plaintiff's mortgage-claim upon the undivided third. The purchaser, the present defendant, paid the money into the hands of the sheriff, who paid it to the judgment creditor. *De Blanc* was not a party to these proceedings, and was a stranger to them.

It is now urged by the defendant that, he holds under a judicial sale provoked by a judgment creditor, whose mortgage covered the entire property, and was the first in rank as to two-thirds of it; that the judicial mortgage was indivisible; that, by the effect of the judicial sale of the entire estate, the plaintiff's mortgage was transferred from the thing to its proceeds, in the hands of the sheriff; that he should have enforced his rights upon the proceeds, by a third opposition in the suit in which the judicial sale was provoked, and has no hypothecary action against the defendant.

It may be conceded that, the position of a mortgagee of an entitre esate, indivisible by its nature, an undivided interest in which has been already encumbered by a valid mortgage, may be inconvenient. Whether, in such a case, the aid of a court of justice might not be invoked to bring in all the mortgage creditors, decree a sale of the 'entire land, and make an equitable distribution of the proceeds according to the relative rank and interests of the mortgage creditors, is a question which we do not now attempt to consider or decide. We shall confine our inquiry to the case before us, in which the purchaser holds under a forced sale, upon proceedings to which the first mortgagee was not a party.

The plaintiff claims under a lawful mortgage, antecedent in point of time to the rights of the judicial mortgagee, and prior in rank to the extent of the interest mortgaged to him. Having such prior right, he was protected by the 683d and 684th articles of the Code of Practice. "If there exist on the property any privileges or special mortgage in favor of other persons than the judgment creditors, and which are preferred to him, the sheriff shall announce that the purchaser shall be entitled to retain in his hands, out of the price for which the property was adjudicated, the amount required to satisfy the privileged debts and special hypothecations to which the property sold was subject, &c." "Consequently if the price offered in this case, by the highest and last bidder, is not sufficient to discharge the privileges and mortgages existing on the property, and which have a privilege over the judgment creditor, there shall be no adjudication, and the sheriff shall proceed to seize other property of the debtor, if there be any." Article 709 provides the remedy for the prior mortgagee: "The hypothecary action lies against the purchaser of property seized which is subject to privileges or mortgages in favor of such creditors as have said privileges and mortgages, in the same manner, and under the same rules and restrictions as are applicable to a third possessor of a mortgaged property."

Although, in the present case, the first mortgagee was not the mortgagee of

DE BLANC  the entire estate seized and sold, yet it cannot be said that he is not within the
v.  letter of the Code.  If the judicial mortgagee had confined his seizure and sale
DUMARTRAIT.  to the two-thirds not covered by the plaintiff's mortgage, the plaintiff could not
have complained ; but when he seized the whole, he seized the portion encumbered by a prior mortgage.  That the plaintiff's case is within the spirit of the Code is too plain to require discussion.  The intent of the lawgiver was to protect the prior encumbrancer.

We are not prepared to say that, the plaintiff might not have treated the sale, *quoad* the one-third mortgaged to him, as an utter nullity.  But it is quite clear that, as the defendant chose to take the property, pay the price, and enter into possession, he may be treated as a third possessor who has taken subject to the mortgage ; and, as he refuses to pay the debt, the plaintiff has a right to have it sold.  If there be hardship, it could have been obviated by greater diligence on the part of the defendant, in ascertaining from the public records the condition of the estate.

We may remark that, the case of *Pigneguy,* cited by counsel (12 Rob. 450,) differs essentially from the present.  There an heir mortgaged his undivided fourth interest in an immovable belonging to a succession, then under administration, and unliquidated.  The property was sold under an order of the Court of Probates, for the purpose of liquidating the succession, and effecting a partition ; and the contest was between the mortgagee and a subsequent purchaser of the heirs' rights.  The proceeds of the sale were considered as standing in the place of the mortgage.  The property, at the time of the mortgage, was the property of the succession, subject as such to its liquidation and partition ; the mortgage was of the heir's share, and the Code expressly declares that such mortgages are dissolved of right upon partition, except upon the property which falls to the heirs who have given the mortgage.  Here the mortgagors were the direct and absolute owners of the undivided third of the property mortgaged.                    *Judgment affirmed.*